UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STONINGTON CAPITAL ADVISORS, LLC, and
STONINGTON DRIVE SECURITIES LLC,

        Petitioners,

        v.

SOUTHFIELD CAPITAL, LLC,

        Respondent.

**OPINION AND ORDER**

20 Civ. 6053 (ER)

Ramos, D.J.:

        Stonington Capital Advisors, LLC ("Stonington Capital") and Stonington Drive Securities LLC ("Stonington Securities," and together, "Stonington") petition the Court, pursuant to § 9 of the Federal Arbitration Act ("FAA"), to vacate in part and confirm in part an award issued in the arbitration of their contract dispute with Southfield Capital, LLC ("Southfield").  Pending before the Court are Stonington's motion to vacate in part and confirm in part the award, its request for attorney's fees and expenses, and Southfield's cross-motion to confirm the award.  Docs. 9, 21.  For the reasons set forth below, Stonington's motion to vacate in part is denied, Stonington's request for attorney's fees and expenses is denied, and the award is confirmed.

**I.    Factual Background**

        Stonington Capital is a placement agent that works with middle market private equity firms to introduce them to prospective investors and facilitate investment.  Doc. 1 at ¶ 4.  Stonington Securities, which is wholly owned by Stonington Capital, is a registered broker-dealer with the U.S. Securities and Exchange Commission and a

member of the Financial Industry Regulatory Authority.  *Id.* at ¶ 5.  Southfield is a lower middle market private equity firm.  *Id.* at ¶ 6.

On June 20, 2014, Southfield executed a Placement Agent Agreement with Stonington[1] (the "Agreement").  *Id.* at ¶¶ 2, 9.  The Agreement provided that Southfield would engage Stonington as the exclusive placement agent for Southfield's private equity fund, Southfield II, L.P. (the "Fund").  *Id.* at ¶¶ 9.  Specifically, Stonington was engaged to "introduce prospective Investors to [Southfield] and facilitate Investments by prospective Investors."[2]  *Id.* at ¶ 10.

Under § 3(ii) of the Agreement, Southfield agreed to pay Stonington a fee "equal to 2.0% of the Investment in the Fund made by each Investor."  *Id.* at ¶ 12(a).  Under § 3(iv) of the Agreement, Southfield was also obligated to pay re-up fees for each Investment in the Successor Fund made by an Investor that had invested in the Fund.  *Id.* at ¶ 12(b).  Section 6 of the Agreement further provided that

> [Southfield] or its Affiliate shall provide [Stonington] with written notice of its intent to launch the Successor Fund not fewer than 180 days prior to the first closing of the Successor Fund (the "Successor Fund Notice"). [Stonington] shall have the right to act as placement agent for the Successor Fund upon providing [Southfield] or its Affiliate, as applicable, with notice of their intent to do so delivered not more than 90 days after the date of their receipt of the Successor Fund Notice. [Stonington's] right in the preceding sentence is conditioned on the Fund having received aggregate Investments of at least $125 million.

---

[1]  Profor Securities, LLC was also engaged as a placement agent pursuant to the Agreement, but assigned its rights under the Agreement to Stonington Securities in August 2017.  *Id.* at ¶ 9 n.3.

[2]  "Investors" are defined as "any person admitted to the Fund other than an Excluded Investor."  *Id.* at ¶ 10 n.4.  The term "Investment" is defined as "a subscription made to the Fund or the Successor Fund by an Investor that has been accepted by [Southfield] in writing."  *Id.*  "Successor Fund" is defined as "the first investment fund (including its parallel funds, if any) formed by [Southfield] following the formation of the Fund that has substantially similar investment focus as the Fund."  *Id.* at Ex. B § 1(g).

2

*Id.* at ¶ 13 (emphases added).  Pursuant to § 13, the Agreement would either terminate at the time of the final closing of the Fund, or upon the parties' request "at any time[.]" Section 13 further states that

> [n]o expiration or termination of this Agreement will affect the matters set out in this Section or in Section 3 with respect to an Investor who is approached by [Stonington] regarding in connection [sic] with its duties under this Agreement or for accrued and unpaid expenses incurred prior to the expiration or termination of this Agreement[], and Sections 4, 9, 10, 11, 12, 13, 14 and 15 of the Agreement.

*Id.* at Ex. B § 13.  The parties agreed to resolve any disputes under the Agreement by arbitration before the American Arbitration Association.  *Id.* at ¶ 27.  Southfield also indemnified Stonington "from and against any and all losses . . . including reasonable attorney's fees and expenses . . . to which [Stonington] . . . may become subject in connection with any material breach . . . under this Agreement by [Southfield]."  *Id.* at Ex. B § 12(a).

In June 2017, aggregate investments in the Fund exceeded $125 million.  *Id.* at ¶ 14.  By the time the Fund closed on July 30, 2017, it had received $200 million in capital commitments.  *Id.* at ¶ 15.

On December 7, 2017, Southfield terminated the Agreement with Stonington.  *Id.* at ¶ 19.  Stonington responded that it "look[ed] forward to working with [Southfield] on future opportunities, including acting as placement agent for Southfield's Successor Fund, a right [it] earned when the Fund exceeded $125 million in capital commitments."  *Id.* at ¶ 21.

Approximately one and one-half years later, on August 20, 2019, Southfield informed Stonington that it had decided not to use Stonington for Southfield's next fundraise.  *Id.* at ¶ 24.  On October 3, 2019, Southfield further informed Stonington that it

intended to form a Successor Fund.  *Id.* at ¶ 25.  On October 8, 2019, Stonington notified Southfield in writing of its intent to exercise its right to act as placement agent for the Successor Fund pursuant to § 6 of the Agreement.  *Id.* at ¶ 26; Doc. 11-2 at ¶ 48.

On November 14, 2019, Southfield filed a demand for arbitration arguing that because the agreement was terminated, it was relieved of its obligations to pay Stonington re-up fees pursuant to § 3(iv) and to engage Stonington as placement agent for the Successor Fund pursuant to § 6.  Docs. 1 at ¶ 28; 11-1 at Ex. C.  Stonington Capital filed a counterclaim, and Stonington Securities filed a third-party claim, seeking declaration that Stonington is entitled to collect under both provisions.  Doc. 1 at ¶ 30.

 On May 26, 2020, the former Chief Judge of the New York Court of Appeals, Hon. Jonathan Lippman (the "Arbitrator"), issued an award finding that Stonington was entitled to § 3(iv) re-up fees, but that it was not entitled to become placement agent to the Successor Fund pursuant to § 6 (the "Award").  Doc. 1 at Ex. A pp. 6-7.  The Arbitrator found that the Agreement was properly terminated pursuant to § 13.  *Id.* at pp. 5.  The Arbitrator further found that Southfield's obligations under § 3(iv) expressly survived termination under the terms of § 13, but that Southfield's obligations under § 6 did not. *Id.* at pp. 5-6.  The Arbitrator reasoned that § 6 was contingent on whether Southfield formed a Successor Fund or terminated the Agreement, and did not vest immediately upon the Fund raising $125 million in capital.  *Id.* at pp. 5.  The Arbitrator also rejected Stonington's argument, pursuant to *Maine Cmty. Health Options v. U.S.*, 140 S. Ct. 1308, 1320 (2020), that the word "shall" in § 6 made it mandatory that Stonington become the placement agent for the Successor Fund, reasoning that the language of § 6 did not

4

survive termination.  *Id.* at pp. 5 & n.1.  On June 29, 2020, Southfield formed the Successor Fund, Southfield Capital III, LP.  Docs. 1 at ¶ 23; 11-3 at Ex. N pp. 6.

On August 3, 2020, Stonington brought the instant petition to vacate in part and confirm in part the Award, and requested attorney's fees and costs pursuant to § 12(a) of the Agreement.  Doc. 1.  Stonington seeks to vacate the Award's finding that § 6 does not survive termination, and to confirm that § 3(iv) does.  On September 11, 2020, Southfield answered the petition, opposed Stonington's motion, and cross-moved to confirm the Award.  Docs. 20, 21.

## II.     Legal Standards

The FAA provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).  District courts "treat a petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (citation omitted).  The award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted).  "The arbitrator's rationale for an award need not be explained" and "[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award."  *Id*. (citations omitted).  Confirmation of an arbitration award is thus "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *Id.* (citations omitted).  This "severely limited" review promotes "the twin goals of

arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citations omitted).

Conversely, "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted). The party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Thus, a party seeking vacatur of an arbitrator's decision "must clear a high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Under the FAA, a court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Providing a "judicial gloss" on these grounds for vacatur, the Second Circuit has held that "the court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (citation omitted).

**III.   Discussion**

While Southfield seeks to confirm the Award *in toto*, Stonington seeks to vacate the portion of the Award finding that its right to act as placement agent for the Successor Fund pursuant to § 6 did not survive the Agreement's termination, and to confirm the Award finding that its right to collect re-up fees for each Investment in the Successor Fund pursuant to § 3(iv) is enforceable.  Stonington's argument is twofold:  that the Award was rendered with manifest disregard for the law because its rights pursuant to § 6 vested before the Agreement was terminated, and the Arbitrator's finding that § 3(iv) remains enforceable is contradictory.  The Court disagrees on both scores.

A court can only vacate an award for manifest disregard of a commercial contract when the arbitral award "contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract."  *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 222 (2d Cir. 2002).  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *United Brotherhood of Carpenters and Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 275 (2d Cir. 2015) (citation omitted).

Having adhered closely to the express terms of the Agreement, the Award easily meets this standard.  Pursuant to § 13 of the Agreement, the parties were permitted to terminate "at any time."  Doc. 1 at Ex. B § 13.  Section 13 expressly carved out nine provisions that would survive termination, a list which does not include § 6.  *Id.*  Under longstanding New York law, courts must interpret contracts so that "every provision of a

7

contract or, in the negative, no provision of a contract should be left without force and effect." *Nemesis 2 LLC v. Paladino*, No. 19 Civ. 3373 (RA), 2019 WL 6215386, at *6 (S.D.N.Y. 2019) (quoting *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956)). The Arbitrator's finding that Stonington's right pursuant to § 6 did not survive termination is therefore a logical interpretation that gives effect to both §§ 6 and 13, two clear provisions of the Agreement.

Stonington counters that its § 6 right survives termination because the right vested at the moment the Fund exceeded $125 million in capital raised, which occurred well before termination. Stonington reasons that § 6 mandates that result because it states that Stonington "shall have the right to act as placement agent for the Successor Fund . . . conditioned on the Fund having received aggregate Investments of at least $125 million." Doc. 1 at Ex. B § 6. Stonington's argument fails, however, because it presumes that raising $125 million in capital was the sole condition precedent necessary to trigger its right under § 6. Reviewing the Agreement as a whole, the Arbitrator found that fundraising $125 million was necessary but not sufficient to trigger Stonington's § 6 right. Doc. 1 at Ex. A pp. 5. Stonington becoming placement agent for the Successor Fund pursuant to § 6 was also contingent on the Agreement remaining in place, and Southfield actually establishing a Successor Fund. *Id.* Because Southfield did properly terminate the Agreement before establishing a Successor Fund, and § 6 was not among the provisions that expressly survived termination, Stonington's right under § 6 never accrued and was terminated with the Agreement. *Cf. W. Elec. Co. v. Solitron Devices, Inc.*, 33 A.D.2d 897, 898 (1st Dep't 1970) ("The alleged termination of the contract . . . cannot affect the rights accrued prior to termination.").

The cases upon which Stonington primarily relies, *Maine Cmty. Health Options v. U.S.*, 140 S. Ct. 1308 (2020), *Kolbe v. Tibbetts*, 22 N.Y.3d 344 (N.Y. 2013), and *N.E. Capital & Advisory, Inc. v. Delaware Bancshares, Inc.*, 59 Misc. 3d 1214(A) (N.Y. Sup. Ct. Apr. 3, 2018), are unpersuasive here.  In *Maine Cmty. Health Options*, the Supreme Court found that certain insurers who claimed losses under the Affordable Care Act were entitled to payment by the Government under a provision stating that the Government "shall pay."  140 S. Ct. at 1315.  In so finding, the Supreme Court confirmed that "the word 'shall' usually connotes a requirement."  *Id*. at 1320 (citation omitted).  However, that § 6 also employs the word "shall" is of no moment, as the § 6 mandate was terminated with Southfield's termination of the Agreement.

Nor does *Kolbe v. Tibbetts*, 22 N.Y.3d 344 (N.Y. 2013) aid Stonington's cause.  Stonington's insistence that the Arbitrator ignored its citations to *Kolbe*, a decision the Arbitrator himself authored while Chief Judge of the New York Court of Appeals, is also incorrect.  *See, e.g.*, Doc. 10 at 15, 16, 18, 21.  In *Kolbe*, plaintiffs challenged changes to their retirement benefits under successive collective bargaining agreements.  *Id.* at 350-51.  The collective bargaining agreements provided that plaintiffs' coverage "shall be the coverage which is in effect for the unit at such time as the employee retires."  *Id.* at 350.  The *Kolbe* Court found that provision created a mandatory, vested right that survived termination based on use of the word "shall" in that "context" and "in the light of the obligation as a whole and the intention of the parties manifested thereby."  *Id.* at 353 (citations omitted).  Here, the Arbitrator considered, and rejected, the argument that the word "shall" made § 6 mandatory in the context of the Agreement because § 13 expressly lists the provisions of the Agreement that survive termination and § 6 is not among them.

9

Doc. 1 at Ex. A pp. 5 & n.1.  To have found otherwise would have been to disregard the explicit terms of § 13.

Moreover, *N.E. Capital & Advisory, Inc. v. Delaware Bancshares, Inc.*, 59 Misc. 3d 1214(A) (N.Y. Sup. Ct. Apr. 3, 2018) is consistent with the Award.  In *N.E. Capital & Advisory*, the Albany County Supreme Court found that plaintiff's right of first refusal survived termination of its agreement with defendant because the right of first refusal is a compensation obligation covered by a section of the agreement that expressly survived termination.  *Id.* at *5.  Unlike the right of first refusal in *N.E. Capital & Advisory*, § 6 is not expressly defined as surviving the Agreement's termination provision.[3]

Based on the language of the Agreement, the Arbitrator's finding that § 3(iv) is enforceable post-termination is not inconsistent with his finding that § 6 is not.  Unlike § 6, under the clear terms of the Agreement, § 3 survives termination pursuant to § 13.

For all of these reasons, Stonington's motion to vacate the portion of the Award denying recovery pursuant to § 6 is denied, and the Award is confirmed in its entirety.  Stonington's further request for attorney's fees and expenses, based on § 12(a) of the Agreement, is also denied.  Although Stonington requests attorney's fees and expenses in its petition, Stonington merely reiterates that request in its reply brief without ever addressing why it would be entitled to attorney's fees and expenses pursuant to § 12(a),

---

[3] The remaining authorities Stonington cites for the proposition that termination of the Agreement could not terminate § 6 are equally unavailing as neither involves similar circumstances to the case at bar.  *Int'l Imaging Materials, Inc. v. Oliverio*, No. 88 Civ. 638 (JTE), 1988 WL 137717, at *1-2 (W.D.N.Y. Dec. 20, 1988) (rejecting argument that "continued operation of the non-competition clauses serves to terminate by negative implication all other clauses, including the arbitration clause" because "[i]t is settled that ordinarily an arbitration clause survives the expiration of the encompassing agreement"); *Arbeeny v. Kennedy Exec. Search, Inc.*, 71 A.D.3d 177, 184 (1st Dep't 2010) (finding an at-will employment contract "cannot be read to enable the defendant to terminate an employee for the purpose of avoiding the payment of commissions which are otherwise owed.").

and the Court finds no evidence of breach of the Agreement that would trigger § 12(a) indemnification.  Docs. 1 at 54(C), 63(C), 69(B); 25 at 20-21.

## IV.     Conclusion

For the forgoing reasons, Stonington's motion to vacate in part is denied, motion to confirm in part is granted, and request for attorney's fees and expenses is denied. Southfield's motion to confirm is granted, and the Award is confirmed.  The Clerk is respectfully directed to terminate the motions, Docs. 9 and 21, and close the case.

SO ORDERED.

Dated:    March 25, 2021
          New York, New York

_____
Edgardo Ramos, U.S.D.J.