UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STONINGTON CAPITAL ADVISORS, LLC, and
STONINGTIN DRIVE SERCURITIES LLC,

          Petitioners,

          v.

SOUTHFIELD CAPITAL, LLC,

          Respondent.

**OPINION AND ORDER**

20 Civ. 6053 (ER)

Ramos, D.J.:

In August 2020, Stonington Capital Advisors, LLC ("Stonington Capital") and Stonington Drive Securities, LLC ("Stonington Securities," and together, "Stonington"), petitioned the Court, pursuant to § 9 of the Federal Arbitration Act ("FAA"), to vacate in part and confirm in part an award issued in an arbitration of their contract dispute with Southfield Capital, LLC ("Southfield"). Docs. 1, 9. Stonington had served as the placement agent for an investment fund managed by Southfield, and the dispute involved, *inter alia*, Stonington's entitlement to certain re-up fees in a successor fund, also managed by Southfield. *See* Doc. 1.

In September 2020, Southfield cross-moved to confirm the award. Doc. 21. In other words, Southfield was no longer contesting that Stonington was entitled to the re-up fees. In an opinion and order issued on March 25, 2021 (the "March 2021 Judgment"), the Court confirmed the award in its entirety, including, as relevant here, the portion of the award granting Stonington the right to the re-up fees. Doc. 27.

On December 22, 2021, Southfield, having determined it had actually overpaid the re-up fees due to Stonington, commenced a second arbitration with the American Arbitration

Association ("AAA"), seeking a declaration that it had overpaid the re-up fees. Doc. 41 at 3–4. Southfield maintains that in accordance with its agreement with Stonington, this claim—whether it overpaid the re-up fees—must be arbitrated. Stonington disagrees, and in February 2022 moved the Court to (1) enforce its judgment confirming the award obligating Southfield to pay it re-up fees and (2) preliminarily enjoin Southfield from arbitrating its claim that it overpaid the re-up fees. Docs. 36, 40.

On July 19, 2022, while its motions to enforce the March 2021 Judgment and for a preliminary injunction remained pending, Stonington moved for a temporary restraining order ("TRO") enjoining Southfield from arbitrating its claim that it overpaid the re-up fees. *See* Doc. 87. At a hearing on July 27, 2022, the Court denied the TRO, finding Stonington had failed to meet the TRO standard and in particular had failed to show a likelihood of irreparable harm due to the delay in filing for the TRO, or that there were serious questions going to the merits. Because—as the parties acknowledged at that hearing—Stonington's pending motions seek substantially the same relief as requested in its motion for a TRO, these motions also are denied.

I.     BACKGROUND

Stonington Capital is a placement agent that works with middle market private equity firms to introduce them to prospective investors and facilitate investment. Doc. 1 ¶ 4. Stonington Securities, which is wholly owned by Stonington Capital, is a registered broker-dealer with the U.S. Securities and Exchange Commission and a member of the Financial Industry Regulatory Authority. *Id.* at ¶ 5. Southfield is a lower middle market private equity firm. *Id.* at ¶ 6.

On June 20, 2014, Southfield executed a Placement Agent Agreement (the "Agreement") with Stonington. *Id.* at ¶¶ 2, 9; *see* Doc. 11-1 at Ex. B. The Agreement provided that Southfield would engage Stonington as the exclusive placement agent for Southfield's private equity fund, Southfield II, L.P. (the "Fund"). Doc. 1 at ¶ 9. Specifically, Stonington was engaged to "introduce prospective Investors to [Southfield] and facilitate Investments by prospective Investors." *Id.* at ¶ 10.

The Agreement defines "Investors" as "any person admitted to the Fund other than an Excluded Investor," and defines "Investment" as "a subscription made to the Fund or the Successor Fund by an Investor that has been accepted by [Southfield] in writing." Doc. 11-1 at Ex. B § 1(e), (f). "Successor Fund" is defined as "the first investment fund (including its parallel funds, if any) formed by [Southfield] following the formation of the Fund that has substantially similar investment focus as the Fund." *Id.* at § 1(g). The Agreement also provided, as relevant here, that under § 3(iv), Southfield was obligated to pay re-up fees to Stonington for each Investment in a Successor Fund made by an Investor that had invested in the Fund.

And, as also relevant here, pursuant to § 14 of the Agreement, the parties agreed to resolve any disputes under the Agreement by arbitration. Specifically, they agreed that: "Any disputes between the parties relating to the terms of this Agreement, or the breach thereof, shall be submitted to binding arbitration in New York, New York, in accordance with the rules of the American Arbitration Association." *Id.* at § 14.

In June 2017, aggregate investments in the Fund exceeded $125 million. Doc. 1 at ¶ 14. By the time the Fund closed on July 30, 2017, it had received $200 million in capital commitments. *Id.* at ¶ 15. On December 7, 2017, Southfield terminated the Agreement. *Id.* at ¶ 19. Stonington responded that it "look[ed] forward to working with [Southfield] on future

3

opportunities, including acting as placement agent for Southfield's Successor Fund, a right [it] earned when the Fund exceeded $125 million in capital commitments." *Id.* at ¶ 21.

On August 20, 2019, Southfield informed Stonington that it had decided not to use Stonington as the placement agent for its next fundraise. *Id.* at ¶ 24. On October 3, 2019, Southfield further informed Stonington that it intended to form a Successor Fund. *Id.* at ¶ 25. On October 8, 2019, Stonington notified Southfield in writing of its intent to exercise its right to act as placement agent for the Successor Fund pursuant to § 6 of the Agreement.[1] *Id.* at ¶ 26.

On November 14, 2019, Southfield filed a demand for arbitration arguing that because the agreement was terminated, it was relieved of its obligations to pay Stonington re-up fees pursuant to § 3(iv) and to engage Stonington as placement agent for the Successor Fund.

On May 26, 2020, the former Chief Judge of the New York Court of Appeals, Hon. Jonathan Lippman (the "Arbitrator"), issued an award finding that Stonington was entitled to § 3(iv) re-up fees, but that it was not entitled to be named as placement agent to the Successor Fund pursuant to § 6. Doc. 1 at Ex. A. In other words, the Arbitrator found that Southfield's obligations under § 3(iv) survived the termination of the Agreement but that Southfield's obligations under § 6 did not. *Id.*

On March 1, 2021, Southfield sent Stonington a summary identifying the Investors in the Fund that had also invested in the Successor Fund, the amount that each such Investor had invested in the Successor Fund, the computed dollar amount of the total re-up fee it owed to

---

[1] § 6 of the Agreement provides: "[Southfield] or its Affiliate shall provide [Stonington] with written notice of its intent to launch the Successor Fund not fewer than 180 days prior to the first closing of the Successor Fund (the "Successor Fund Notice"). [Stonington] shall have the right to act as placement agent for the Successor Fund upon providing [Southfield] or its Affiliate, as applicable, with notice of their intent to do so delivered not more than 90 days after the date of their receipt of the Successor Fund Notice. [Stonington's] right in the preceding sentence is conditioned on the Fund having received aggregate Investments of at least $125 million." Doc. 11-1 at Ex. B § 6.

Stonington, and the payment dates for each of the eight quarterly installment payments of the re-up fee. Doc. 38 ¶ 22. That same day, Southfield paid Stonington the first four quarterly installment payments. *Id.* ¶ 23.

As set out above, on March 25, 2021, the Court confirmed the Arbitrator's award in its entirety, determining, as relevant here, that the Arbitrator did not err in finding that § 3(iv)—requiring the payment of re-up fees—survived the termination of the Agreement. Doc. 27 at 10.

Several months later, in the fall of 2021, Southfield—after receiving an invoice from Stonington relating to investors in another fund—undertook to confirm the accuracy of the four payments it had made on re-up fees. Doc. 56 at 6. Southfield explains that the Agreement plainly requires re-up fees to be paid only if investors that entered into subscription agreements for the Fund *also* entered into subscription agreements for the Successor Fund. *Id.* According to Southfield, contrary to the summary it had previously sent to Stonington, it accepted investments in the Successor Fund only from two Investors that had invested in the Fund and, as a result, had overpaid the re-up fees and was due a refund from Stonington. *Id.*

On December 22, 2021, Southfield sent a letter to Stonington explaining the overpayment and requesting a refund, and on the same day filed a second demand for arbitration with the AAA. Doc. 41 at 3–4; Doc. 58 ¶ 3. One of Southfield's claims in this arbitration is for a declaration that it overpaid Stonington for re-up fees under § 3(iv). Doc. 52 at 5. Southfield argues this claim must be arbitrated, as under § 14 of the Agreement, the parties agreed to resolve through arbitration any disputes relating to the terms of the Agreement. In other words, because, as Southfield points out, resolution of the dispute over the alleged overpayment of re-up fees involves interpretation of one of the Agreement's terms—namely, "Investors"—that dispute

must be arbitrated. Stonington on the other hand objects to the arbitration of this claim, arguing it must be decided by this Court.

On February 11, 2022, after Southfield failed to tender the scheduled payment of the re-up fees due on January 13, 2022, Stonington moved the Court to enforce its March 2021 Judgment confirming the portion of the award obligating Southfield to pay § 3(iv) re-up fees to Stonington. See Doc. 36. According to Stonington, Southfield, in violating its payment obligation, had failed to comply with this Court's order. As a result, Stonington asked the Court to enter an order enforcing the March 2021 Judgment and directing Southfield to pay the balance of the re-up fees to Stonington.

A few days later, on February 18, 2022, Stonington also moved the Court for a preliminary injunction, requesting that the Court enjoin arbitration of Southfield's claim that it had overpaid the re-up fees. See Doc. 40. At the outset, Stonington asserted that this Court has exclusive jurisdiction over that claim, arguing that because Stonington's right to the re-up fees arises from the March 2021 Judgment and the parties did not agree to arbitrate disputes over Southfield's compliance with the judgment, any dispute with respect to the payment of the re-up fees is not arbitrable and must be determined by this Court.

Stonington then argued that the Court must enjoin the ongoing arbitration as (1) Stonington would be irreparably harmed if compelled to arbitrate that claim, and (2) Stonington's motion raises serious questions as to whether the claim is arbitrable. As to irreparable harm, Stonington argued first that it had not agreed to arbitrate any disputes over enforcement of this Court's March 2021 Judgment. And, second, Stonington argued it would suffer irreparable harm as a result of the risk of inconsistent rulings concerning the parties' respective obligations from an arbitrator and the Court.

Last, Stonington argued that threshold questions of arbitrarily, namely whether the parties' agreement to arbitrate applies to a particular dispute, should be resolved by the Court and not by an arbitrator. In other words, according to Stonington, if there is a question as to whether the dispute over the re-up fees is arbitrable or not, the Court, not the arbitrator, must answer that question.

On July 19, 2022, while its motions to enforce the March 2021 Judgment and for a preliminary injunction remained pending, Stonington moved for a TRO enjoining Southfield from arbitrating its claim that it overpaid the re-up fees. *See* Doc. 87. The Court held a TRO hearing on July 27, 2022. As Stonington conceded at that hearing, its TRO set out the same arguments already proffered in its February, 2022, motion for a preliminary injunction. Indeed, the two motions are nearly identical: in its TRO motion, as before, Stonington argues the Court has jurisdiction to enforce its own judgment; Stonington is irreparably harmed (1) by being forced to arbitrate an issue it did not agree to arbitrate and is not arbitrable and (2) by assuming the risk of inconsistent rulings; and there are serious questions as to whether Southfield's claim that it has already overpaid the re-up fees is arbitrable.[2]

In addition, Stonington also argues that it is being irreparably harmed by Southfield's continued refusal to provide federal-court discovery, and that this refusal is an attempt on Southfield's part to delay this matter.

---

[2] In the Second Circuit, as an alternative to showing a likelihood of succeeding on the merits, the movant can rely on the "serious questions" standard. Under this standard, the movant may secure relief if it establishes that, even in the absence of a likelihood of success, there exist "sufficiently serious questions going to the merits to make them a fair ground for litigation," so long as the movant also establishes that "the balance of hardships tips decidedly" in its favor. *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 273 (S.D.N.Y.), *aff'd*, 788 F. App'x 85 (2d Cir. 2019)

At the hearing on July 27, the Court denied Stonington's motion for a TRO and will, here, reiterate the reasons for that denial, as set out on the record.

## II. LEGAL STANDARD

This Court has the inherent power and jurisdiction to manage its proceedings and to control the conduct of the litigants before it. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 409 F.2d 718, 725 (2d Cir. 1969), *rev'd on other grounds,* 403 U.S. 388 (1971). That inherent power includes the authority to issue orders enjoining litigants, preliminarily or permanently, from engaging in contumacious conduct. "[A] district court has the inherent power to issue an injunction against litigants who harass their opponents." *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAx), 2019 WL 6917918, at *5 (C.D. Cal. Oct. 17, 2019), *citing Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007); *see also Lewis v. S. S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976) ("Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants."). Such injunctions bind not only parties, but also their officers, agents, servants, and employees. *See* Fed. R. Civ. P. 65(d)(2).

The standard for an entry of a temporary restraining order ("TRO") is the same as for a preliminary injunction, *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. May 20, 2008), and, to obtain a preliminary injunction, a party must show "a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Coronel v. Decker*, 449 F. Supp. 3d 274, 280–81 (S.D.N.Y. 2020) (citing *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015)).

Irreparable harm is the "single most important prerequisite" to a TRO. *Coronel*, 449 F. Supp. 3d at 281. To succeed on this factor, a movant must show that, absent the injunction, they will suffer a harm that cannot be remedied by damages or a permanent injunction upon final adjudication. *Id.* The harm must also be actual and imminent, not remote or speculative. *Id.*

### III.     DISCUSSION

As the Court noted at the outset and as conceded by the parties, there was no difference between the TRO motion at issue and the motion for a preliminary injunction previously filed. The lapse in time between the two motions, the Court reasoned, mitigated against the issuance of a TRO.

Beyond this, Stonington has failed to establish irreparable harm. Stonington's central argument is that it is harmed by being compelled to arbitrate an issue it has not agreed to arbitrate. That issue, at bottom, is a dispute over the identity of the Investors in the Successor Fund. In other words, Stonington expected from Southfield a certain amount of re-up fees as determined by its understanding of which Investors from the Fund had also invested in the Successor Fund—an understanding which was in turn informed by Stonington's interpretation of the term "Investors." After paying half the amount, Southfield ultimately determined it had mistakenly overpaid, challenging Stonington's understanding of the Investors' identities as well as its interpretation of the term "Investors."

As the Court made clear, neither the original arbitrator nor this Court was asked to determine the identity of the Investors or construe the meaning of the term "Investor" as used in the Agreement. Here, the Court's only role was to confirm that the arbitrator correctly determined that Stonington was entitled to re-up fees. As to the identities of the Investors, these are discernible not from the Court's judgment—or the Award—but from the Agreement, which

9

sets out definitions for "Investors," among a number of other terms.  A determination, then, of whether Stonington or Southfield is correct with respect to who qualifies as an Investor would require an interpretation of the Agreement.  And the parties expressly agreed, in § 14 of the Agreement, that any dispute relating to the terms of the Agreement must be arbitrated in accordance with the rules of the AAA.  Accordingly, there is no irreparable harm because arbitration of the dispute over the definition of the term "Investors" is precisely what the parties agreed to in § 14 of the Agreement.

Because irreparable harm is the "single most important prerequisite" to a TRO, *Coronel*, 449 F. Supp. 3d at 281, the analysis could end here.  In any event, none of the remaining factors is met.  As the Court made clear, Stonington has not raised a sufficiently serious question as to the arbitrability of this claim—and, indeed, of the threshold question whether the claim is arbitrable—as it is clear that the dispute is over the terms of the Agreement and that such a dispute is arbitrable.  Likewise, because the parties agreed to arbitrate such a dispute, the equities weigh in favor of Southfield, which is only asking that the parties abide by their Agreement to arbitrate.  And, last, as the public interest broadly favors arbitration provisions, it would be contrary to the public interest for the Court to insist that the arbitration be enjoined.  *See Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999).

## IV.     CONCLUSION

For the reasons set forth above and as stated on the record on July 27, 2022, Stonington's motion for a TRO is DENIED.  For the same reasons, Stonington's motions (1) to enforce the Court's judgment—by directing Southfield to pay the remaining, and disputed, amount of re-up fees—and (2) to enjoin arbitration also are DENIED.  The Clerk of Court is respectfully directed to terminate the motions, Docs. 36, 40, and 87.

It is SO ORDERED.

Dated:   August 1, 2022
         New York, New York

_____
Edgardo Ramos, U.S.D.J.